**Daniel D. RAPPA, Sr., Plaintiff,**

v.

**NEW CASTLE COUNTY,
et al., Defendants.**

**Daniel D. RAPPA, Sr., Plaintiff,**

v.

**STATE of Delaware, et al., Defendants.**

**Daniel D. RAPPA, Sr., Plaintiff,**

v.

**MAYOR AND COUNCIL OF
WILMINGTON, et al.,
Defendants.**

Civ. A. Nos. 90–608 to 90–610.

United States District Court,
D. Delaware.

May 29, 1992.

Carl Agostini, Thomas Neuberger, Wilmington, DE, for plaintiff.

John Parkins, Wilmington, DE, for defendants.

## MEMORANDUM AND ORDER

FULLAM, Senior District Judge.

During late summer of 1990, plaintiff Daniel Rappa ran, unsuccessfully, against incumbent Thomas Carper in the Democratic primary for election to the U.S. House of Representatives. In pursuit of a campaign strategy to increase his name recognition as quickly as possible, plaintiff placed signs, ranging from $4' \times 4'$ or $4' \times 8'$ ground signs to $24'' \times 24''$ yard signs and posters, on the private property of supporters but within twenty-five feet of the public right-of-way, in the public right-of-way abutting the property of supporters, and within the right-of-way adjacent to public sidewalks and roadways.

Many of these signs were removed by Delaware ("State"), New Castle County ("County") and Wilmington ("City") officials, allegedly pursuant to various local laws prohibiting the erection of signs. The entities supplied plaintiff with varying de-

grees of notice before making the removals: the State concedes that no notice was given; the County provided 24 hours written notice as to at least some of the signs removed; and the City provided approximately ten days' written notice. It is unclear whether plaintiff was given the opportunity to reclaim the seized signs.

In October 1990 plaintiff filed these nearly identical § 1983 suits against the State, County, and City (and various officials in their employ) challenging the statutes and ordinances regulating signs. Count I alleges that these laws are (1) facially violative of the First and Fourteenth Amendments, both because they are content-based and because they are invalid time, place, and manner restrictions, and (2) unconstitutional as applied because they are enforced in a discriminatory manner. Count II alleges violations of the Equal Protection Clause and Count III alleges substantive and procedural due process violations. Plaintiff generally seeks declaratory judgments that the laws are unconstitutional; permanent injunctions prohibiting their enforcement; nominal, compensatory and punitive damages; and fees and costs.

Plaintiff and defendants have filed cross-motions for summary judgment[1] in each of the three actions. For the reasons explained below, I find that the State statutes and County ordinances are facially unconstitutional under the First and Fourteenth Amendments because they impermissibly regulate speech on the basis of content. While I find that the City ordinances survive the facial, content based challenge, I will allow the case to proceed on the issues of whether the ordinances are valid time, place and manner restrictions and whether they were applied in a discriminatory manner.

**1.** The motions to dismiss filed by the State and County are supported by affidavits and other attachments, and thus are properly treated as motions for summary judgment.

**2.** "Outdoor advertising" is defined as including "any outdoor sign, display, device, picture, emblem, trademark, figure, painting, drawing, message, placard, poster, billboard, light or other thing which is designed, intended or used to

## THE STATUTORY SCHEMES

### A. *Delaware*

Delaware law prohibits the placement of any "outdoor advertising" within twenty-five feet of the right-of-way of any public highway. Del.Code Ann. tit. 17, § 1108(a) (1983).[2] Exceptions are made to this blanket prohibition for directional or warning signs, and official signs or notices approved by the Delaware Department of Transportation, § 1108(a); signs which advertise the sale or lease of the real property where they are located, § 1108(c); signs which advertise activities conducted upon the real property where they are located, *id.;* and signs displayed on school bus waiting shelters, *id.*

Outdoor advertising is additionally barred from the right-of-way of any public highway. Sections 1107(b), 1108(b)(1). Exceptions are provided for official signs and for the species of on-site signs detailed above. Subsection (b) further recognizes an exception for "beautification/landscape planting sponsorship signs." Section 1108(d).

Finally, the following signs are permitted in the area "adjacent to the right-of-way" of interstate or "primary system" highways: on-site business identification signs; on-site sale/lease signs; announcements of "any town, village or city advertising itself or local industries, meetings, buildings, historical markers or attractions"; and directional and other official signs including those "pertaining to natural wonders, and scenic and historic attractions." Sections 1114, 1121, 1102(b)(4).

After 30 days' written notice, violators are subject to fines ranging from $10 to $50 and liable for the costs of removing the offending signs. Sections 1111(a), 1113.

advertise, to inform or to attract the attention of the traveling public, which is within 660 feet and visible or beyond 660 feet and visible and erected with the purpose of being read from the main traveled way of any state highway." Section 1102(b)(1). "Visible" means capable of being seen, whether or not legible, by a person of normal visual acuity. Section 1102(b)(8).

## B. *New Castle County*

The New Castle County ordinance incorporates the provisions of Title 17, Chapter 11 of the Delaware Code. New Castle Co. Code Art. XII, § 23–73.[3] The County Code prohibits all signs "except as permitted." *Id.*[4] Some signs are permitted everywhere (except that no signs are allowed on lampposts, utility poles, hydrants or trees), generally with no setback requirement. These privileged signs include directional, informational, warning and no trespassing signs; memorial plaques, corner stones, and historical tablets; flags or emblems of governmental, educational or religious organizations; signs which are an integral part of gasoline pumps; and "noncommercial signs relating to ideological, religious or political thought." Sections 23–73.3(1), 73.4(6)(m). Additional exceptions are made for on-site signs, including real estate sale/lease and development signs; signs identifying those engaged in construction; office identification signs and bulletin boards;[5] and temporary signs advertising "a grand opening, special event, sale and the like." Sections 23–73.3(2), 73.5(1)(a)(2) and (b)(2).

Notwithstanding the provision for noncommercial signs relating to political thought of § 23–73.3(1)(1), the County restricts "temporary political campaign signs" separately. The candidate may place signs only with the permission of the property owner, and signs must be re-moved within ten days of the election. However, "[n]o sign shall be placed on public property or in a right-of-way or upon any utility pole, light fixture, street or traffic sign or in any place which obstructs vision while driving." Section 23–73.3(4). Election signs, along with lot-premises and instructional signs, are exempted from the permit requirement, § 23–73.4(4)(d), but, unlike all other categories of permitted signs, violative election signs are subject to removal after 24 hours' notice, rather than 30 days'. Sections 23–73.3(4)(d), 73.4(1). Additionally, and again unlike other signs, the Code specifically provides that political campaign committees may be charged for the cost of removal. *Id.*

## C. *Wilmington*

A hodgepodge of ordinances comprises Wilmington's regulation of signs. Placards, posters, and advertisements are prohibited on any public structure or building, or any lamppost, electric light, telephone or telegraph pole, hydrant or tree located on or along any public street or highway in the City. 1 Wil.C. § 21–1; 2 Wil.C. § 36–10. Commercial, but not political campaign, advertising is permitted on parking meters and city trash receptacles after payment of a fee. 1 Wil.C. § 21–1.1.

No sign[6] may be erected without first obtaining a permit and paying a fee, with the exception of temporary signs[7] not ex-

---

**3.** There is no overlap with State statutes as to roads, other than interstate or primary system highways, within corporate limits of any incorporated city or town. *Del.Code Ann. tit. 17,* §§ 1103(c), 1102(b)(2)–(b)(4).

**4.** "Sign" is defined as including "any writing, figure, representation, emblem, flag, three-dimensional figure or model, device, letter, word, street clock and temperature announcement" and "any announcement, declaration, demonstration, display, illustration, name, identification, description or insignia used to advertise or promote the interest of any person, group or business." Section 23–73.1(1).

**5.** "Identification" is defined as:

A sign necessary to and located at the same premises as the business for which it advertises; such sign indicating the name of the business, the principal product or service, and/or logo. For the purposes of this article, noncommercial signs which contain ideological, religious or political thought or messages shall be considered identification signs.
Section 23–73.1(9). "Bulletin boards" are signs "of a permanent character, but with movable letters, . . . indicating the names of persons associated with, or events conducted upon, or products or services offered upon, the premises upon which such a sign is maintained." Section 23–73.1(10).

**6.** The Code broadly defines sign as "every sign, billboard, ground sign, wall sign, roof sign, . . . awning, canopy and street clock" including "any announcement, declaration, demonstrations, display illustration or insignia used to advertise or promote the interests of any person." 2 Wil.C. § 42–1.

**7.** "Temporary sign" is "[a] display sign, banner or other advertising device constructed of cloth, canvas, fabric or other light temporary material, with or without a structural frame, intended for a limited period of display, including decorative

ceeding twenty-four feet square. 2 Wil.C. §§ 42–4(a), 42–5(e). Also excepted from the permit requirement are certain signs not exceeding twenty-five feet square: on-site real estate signs, on-site bulletin boards for public, charitable or religious institutions; construction signs; and memorial signs and tablets. *Id.*, § 42–22. Violating signs are removable after 10 days' notice, unless they pose an immediate peril to persons or property. *Id.*, §§ 42–8, 42–9.

Finally, no encroachments beyond the "true building line" of streets, highways, lanes and alleys of the City are permitted except for newspaper and magazine boxes, and telephone booths. No advertising is allowed on the former. 2 Wil.C. §§ 45–93, 45–97(a) and (b).

## STANDING

Each of the defendants challenges plaintiff's standing to pursue this litigation.

■ The State argues that it removed plaintiff's signs pursuant to its authority under 17 Del.C.Ann. §§ 131 and 132 to "maintain"[8] all state highways, rather than its authority under Chapter 11 to remove improperly placed signs. Therefore, it reasons, plaintiff has no standing as to Chapter 11. I reject this argument. The statutes relied upon do not on their face charge the Department of Transportation with the duty to remedy safety hazards; rather, their focus is on maintaining the physical condition of the roadway. Moreover, the warning letter sent by Secretary Justice to plaintiff shortly before the primary, soliciting the latter's observation of the relevant laws, refers only to Chapter 11.

■ All of the defendants seek to narrow the focus of inquiry by arguing that plaintiff is precluded from challenging those sections of the statutes and ordinances not actually applied to him, that is, those sections which relax the sign restrictions for some categories of speech. For example, the State makes the astonishing assertion that since only the broad prohibition against signs contained in § 1108(b)(1) was applied to plaintiff, he cannot challenge subsections (c) and (d), which enumerate exceptions to it. This argument ignores the obvious in at least two ways: first, subsections (c) and (d) are incorporated by reference into subsection (b); and second, the whole basis of plaintiff's claim is that the statute discriminatorily restricts his speech by giving preference to other speakers. The County and City make similar arguments which must also be rejected.

■ In order to have standing to challenge governmental action as a violation of the First Amendment a litigant must demonstrate "a claim of specific present objective harm or a threat of specific future harm." *Meese v. Keene*, 481 U.S. 465, 472, 107 S.Ct. 1862, 1866–67, 95 L.Ed.2d 415 (1987), quoting *Laird v. Tatum*, 408 U.S. 1, 14, 92 S.Ct. 2318, 2326, 33 L.Ed.2d 154 (1972). That requirement is met here since plaintiff's free speech rights have been, and will continue to be,[9] directly abridged by the at issue statutes and ordinances.

## FACIAL CHALLENGE

■ *Metromedia v. San Diego*, 453 U.S. 490, 101 S.Ct. 2882, 69 L.Ed.2d 800 (1981),

---

displays for holidays or public demonstrations." 2 Wil.C. § 42–1. The restriction that the advertisement contained on the sign pertain only to business conducted on the premises does not apply to signs of a "civic, political or religious nature." *Id.*, § 42–28(f).

8. Section 101(a)(4) provides:
    "Maintenance" as applied to constructed or reconstructed highways, is the upkeep and support thereof with true surfaces in a hard, smooth condition as when such highways were constructed or reconstructed and with proper and adequate drainage systems; as applied to state highways not constructed or reconstructed, is the upkeep and support thereof in as high a condition of perfection as is consistent with the character of such unconstructed or unreconstructed highway and shall include the keeping of the right-of-way of all state highways clear of underbrush and debris which might interfere with the drainage or injure the foundation of such highways and the setting out and preserving of trees where desirable along such right-of-way.

9. In November 1991, plaintiff announced his candidacy for governor in the November 1992 election.

laid down three rules for sign laws: 1) it is permissible to treat on-site commercial speech more favorably than off-site commercial speech, *id.* at 511–512, 101 S.Ct. at 2894; 2) noncommercial speech may not be regulated more stringently than commercial speech, *id.* at 513, 101 S.Ct. at 2895; and 3) certain types of noncommercial speech may not be preferred over other noncommercial speech, *id.* at 514–15, 101 S.Ct. at 2896. Only the latter two rules are implicated in plaintiff's challenges here.

■ The state statute permits two types of signs: on-site commercial and real estate signs and certain types of off-site noncommercial signs. By permitting on-site commercial signs, the State inverts the constitutionally mandated hierarchy that elevates noncommercial over commercial speech. As the *Metromedia* plurality stated in striking down the San Diego ordinance which closely parallels that at issue here:

> Insofar as the city tolerates billboards at all, it cannot choose to limit their content to commercial messages; the city may not conclude that the communication of commercial information concerning goods and services connected with a particular site is of greater value than the communication of noncommercial messages.

453 U.S. at 513, 101 S.Ct. at 2895. In the wake of *Metromedia,* many governmental entities responded by adding provisions to their sign laws which permit noncommercial messages wherever commercial messages are allowed. *See National Advertising Co. v. Babylon,* 900 F.2d 551, 556–57 (2d Cir.1990). The defendant State has failed to enact such a saving provision.

The state statute runs afoul of the First Amendment also by discriminating in favor certain types of noncommercial speech. Just as the San Diego ordinance contained exceptions from the general prohibition for religious symbols, temporary political signs, and signs displaying news items, so the State statute provides exceptions for "beautification" signs,[10] signs advertising local industries, and signs pertaining to natural wonders, and scenic and historic

attractions. The State may not in this way choose the appropriate subjects for public discourse. *See Metromedia,* 453 U.S. at 514–15, 101 S.Ct. at 2896.

■ The County Code, by incorporating Chapter 11, is invalid to the same extent as the State statute. In addition, although a savings clause permits on-site signs containing ideological, religious or political thought wherever, and to the same extent as, on-site business identification signs are permitted, there is no parallel provision permitting such noncommercial signs wherever on-site real estate signs are permitted. Granted, such noncommercial signs are generally allowed, but their permissible size is half that of on-site real estate signs. The Code also permits businesses to maintain additional temporary signs advertising a grand opening or sale and makes special provision for gasoline pumps.

■ Aside from the preference shown to commercial speech, the County impermissibly discriminates among forms of noncommercial speech by placing greater restrictions on political campaign signs than other noncommercial signs. Campaign signs are barred from public property and the rights-of-way (of significance where there is no overlap between the State and County provisions), and permission, sometimes written, is required from the property owner before signs are placed. More significantly, violating campaign signs are subject to removal after a significantly shorter notice period and their sponsors are liable for the cost of removal.

■ Both the State and County defend their laws as content neutral on the ground that they do not favor one side over another on a subject of public controversy. This concept of neutrality has been specifically rejected by the Supreme Court. *Metromedia,* 453 U.S. at 518–19, 101 S.Ct. at 2898; *Consolidated Edison Co. v. Public Service Comm'n,* 447 U.S. 530, 537, 100 S.Ct. 2326, 2333, 65 L.Ed.2d 319 (1980). "The First Amendment's hostility to content-based regulation extends not only to restrictions

---

**10.** This exception arguably also constitutes a     preference for commercial speech.

on particular viewpoints, but also to prohibition of public discussion of an entire topic." *Consolidated Edison*, 447 U.S. at 537, 100 S.Ct. at 2333; *see also Police Dept. of Chicago v. Mosley*, 408 U.S. 92, 95, 92 S.Ct. 2286, 2289, 33 L.Ed.2d 212 (1972). The guarantee of free speech is something more than a safeguard against the appearance of governmental favoritism.

■ Both of these entities have additionally sought refuge in the secondary effects analysis articulated in *Renton v. Playtime Theatres*, 475 U.S. 41, 106 S.Ct. 925, 89 L.Ed.2d 29 (1986) and *Young v. American Mini Theatres*, 427 U.S. 50, 96 S.Ct. 2440, 49 L.Ed.2d 310 (1976). They argue that their laws are not directed at the content of signs but at the safety hazards and visual blight that the signs occasion, and thus the laws are content neutral remedies for these secondary effects. Campaign signs in particular, by reason of "their sheer volume," are said to present a unique problem. These arguments are meritless. The secondary effects analysis has thus far been applied only in the limited context of zoning ordinances directed at businesses purveying sexually explicit materials, a "type of expression [that] is of a wholly different, and lesser, magnitude than the interest in untrammeled political debate." *American Mini Theatres*, 427 U.S. at 70, 96 S.Ct. at 2452 (plurality opinion). I decline to extend the secondary effects rationale to political speech. It may be that the proliferation of political campaign signs is objectionable. But if the First Amendment means anything it means that this form of speech is too precious by far to be curtailed for that reason. When state action affects political speech it "trenches upon an area in which the importance of First Amendment protections is 'at its zenith.'" *Meyer v. Grant*, 486 U.S. 414, 425, 108 S.Ct. 1886, 1894, 100 L.Ed.2d 425 (1988).

■ The infirmities which plague the State and County laws are not evident in the City Code. The City may choose to sell the right to place advertisements on City parking meters and trash cans only to commercial advertisers. *Lehman v. Shaker Heights*, 418 U.S. 298, 94 S.Ct. 2714, 41 L.Ed.2d 770 (1974). No signs are permitted on public structures, utility poles, on or along public streets or highways. While on-site commercial and real estate signs and on-site bulletin boards for public, charitable or religious organizations are otherwise permitted, because exempt from the permit requirement, so too are temporary signs of a civic, religious or political nature. Plaintiff draws attention to the exception to the ban on encroachments beyond the true building line of any street granted to newspaper boxes. Inasmuch as advertising is specifically prohibited from these structures, I do not believe that these provisions constitute a content based restriction on speech. In sum, I find no preference for commercial or for certain noncommercial speech in the City Code.

■ This conclusion obviously does not resolve plaintiff's challenge to these ordinances as valid time, place, and manner restrictions. On the authority of *City Council of Los Angeles v. Taxpayers for Vincent*, 466 U.S. 789, 104 S.Ct. 2118, 80 L.Ed.2d 772 (1984), there can be no doubt that the City's interest in traffic safety and aesthetics is sufficient to support its ban on signs or that the ordinances are sufficiently tailored to support those interests. However, I am unprepared to find as a matter of law that adequate alternative means of communication were and are available to plaintiff. I regard this issue as a close one inasmuch as plaintiff and his expert have done little more than allege that other means of communication are prohibitively expensive and have failed to explain why less expensive means, such as posting signs legally on supporters' property or handbilling, are inadequate. An additional consideration here is that disputed issues of fact preclude summary decision on plaintiff's as applied challenge to the City's ordinances. Therefore, I will allow these aspects of plaintiff's case to proceed.

## RELIEF

■ The Eleventh Amendment bars suit against the State and the Department of Transportation. *Pennhurst State School & Hospital v. Halderman*, 465 U.S.

89, 100–01, 104 S.Ct. 900, 907–08, 79 L.Ed.2d 67 (1984); *Quern v. Jordan*, 440 U.S. 332, 341, 99 S.Ct. 1139, 1145, 59 L.Ed.2d 358 (1979). Plaintiff's arguments to the contrary are wholly specious. Summary judgment shall be granted as to these parties.

The Eleventh Amendment presents no bar to enjoining defendant Secretary Justice in his official capacity. He will be enjoined from enforcing §§ 1108, 1111 and 1121 in any way which treats political signs differently than commercial signs or treats certain noncommercial signs differently than political signs. That is, he is enjoined to permit political signs to the same extent as commercial signs under §§ 1108(c), 1114(1), 1114(2), 1114(6), 1121(2) and 1121(3) and to permit political signs to the same extent as the types of signs specified under §§ 1108(d), 1114(6), and 1121(1).

The County and the individual County defendants in their official capacities will be enjoined from enforcing § 23–73, to the extent that it incorporates Chapter 11 of Title 17 of the Delaware Code, in any manner inconsistent with the Order made against Secretary Justice. Further, they will be enjoined from enforcing § 23–73 in any way which treats political signs differently than commercial signs; that is, they are enjoined to permit political signs to the same extent as commercial signs under § 23–73.3(1), 73.3(2), 73.3(3), and 73.3(5). Finally, they will be enjoined from enforcing § 23–73.3(4) to the extent that it (1) restricts the placement political campaign signs on public property and in the rights-of-way more stringently than other signs are restricted in these areas by other Code provisions, (2) requires the permission of a property owner that is not required as to other signs, (3) permits a shorter notice period than that mandated under § 23–73.-4(1), and (4) authorizes the County to charge campaign committees for the removal of illegal signs.

Inasmuch as neither Secretary Justice nor any of the individual County or City defendants has established as a matter of law that they are immune in their individual capacities, their motions for summary judgment as to this issue will be denied.

The motion for summary judgment filed by the City and individual defendants will be granted in part, to the extent of declaring that the City ordinances in question are not facially unconstitutional content-based restrictions.

In all other respects, the motions for summary judgment, as well as any other outstanding motions, will be denied.

The appropriate Orders follow.

## ORDER IN NO. 90–608

AND NOW, this 29th day of May, 1992, it is ORDERED:

1) Plaintiff's Motion for Partial Summary Judgment is GRANTED IN PART, to the extent of declaring the ordinances, as listed below, facially unconstitutional.

2) Defendants are ENJOINED from enforcing New Castle Co. Code Art. XII, § 23–73, to the extent that it incorporates Chapter 11 of Title 17 of the Delaware Code, in any manner inconsistent with the Order entered today in Civil Action No. 90–609.

3) Defendants are ENJOINED from enforcing New Castle Co. Code Art. XII, § 23–73 in any way which treats political signs differently than commercial signs.

4) Defendants are ENJOINED from enforcing New Castle Co. Code Art. XII, § 23–73.3(4) to the extent that it (a) restricts the placement of political campaign signs on public property and in the rights-of-way more stringently than other signs are restricted in these areas by other Code provisions, (b) requires the permission of a property owner that is not required as to other signs, (c) permits a shorter notice period than that mandated under New Castle Co. Code Art. XII, § 23–73.4(1), and (d) authorizes the County to charge campaign committees for the removal of illegal signs.

5) In all other respects, the Plaintiff's Motion for Partial Summary Judgment and Defendants' Motion for Summary Judgment are DENIED.

6) All other outstanding motions are DENIED.

### ORDER IN NO. 90–609

AND NOW, this 29th day of May, 1992, it is ORDERED:

1) Defendants' Motion for Summary Judgment is GRANTED IN PART, to the extent of dismissing Plaintiff's action against the State of Delaware and the Department of Transportation.

2) Plaintiff's Motion for Partial Summary Judgment is GRANTED IN PART, to the extent of declaring the statutes, as listed below, facially unconstitutional.

3) Defendant Justice, in his official capacity, is ENJOINED from enforcing Del. Code Ann. tit. 17, §§ 1108, 1111 and 1121 in any way which treats political signs differently than commercial signs or treats noncommercial signs differently than political signs. That is, he is enjoined to permit political signs to the same extent as commercial signs under Del.Code Ann. tit. 17 §§ 1108(c), 1114(1), 1114(2), 1114(6), 1121(2) and 1121(3) and to permit political signs to the same extent as the types of signs specified under Del.Code Ann. tit. 17, §§ 1108(d), 1114(6) and 1121(1).

4) In all other respects, Plaintiff's Motion for Partial Summary Judgment and Defendant's Motion for Summary Judgment are DENIED.

5) All other outstanding motions are DENIED.

### ORDER IN NO. 90–610

AND NOW, this 29th day of May, 1992, it is ORDERED:

1) Defendants' Motion for Summary Judgment is GRANTED IN PART, to the extent of declaring that the City ordinances in question are not facially unconstitutional content-based restrictions.

2) In all other respects, Plaintiff's Motion for Partial Summary Judgment and Defendants' Motion for Summary Judgment are DENIED.